In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-1602

ROBERT EARL BADELLE,

*Petitioner-Appellant,*

*v.*

CURTIS CORRELL,[Œ]

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 238—**Larry J. McKinney**, *Chief Judge.*

---

ARGUED JUNE 7, 2005—DECIDED JUNE 22, 2006

---

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Almost thirty years ago, Robert Kannapel Sr. was shot and killed while working at an Indianapolis gas station. Robert Badelle was convicted of the murder by an Indiana jury in 1979 and sentenced to sixty years' imprisonment. Badelle's conviction and sentence were affirmed on direct appeal. *Badelle v. State,* 449 N.E.2d 1055 (Ind. 1983) (*Badelle I*).

---

[Œ] Warden Curtis Correll has been substituted for John R. Vanatta, as Badelle has been moved to the Plainfield prerelease center.

Four years after the final disposition of his direct appeal, Badelle commenced an action for postconviction relief in state court. For reasons not entirely clear from the record, this petition apparently remained pending for twelve years without substantial action by the Indiana court.[1] An evidentiary hearing was finally convened in the fall of 1999; it lasted four days and 44 witnesses testified. The postconviction court denied relief, and the denial was upheld on appeal. *Badelle v. State*, 754 N.E.2d 510 (Ind. App. 2001) (*Badelle II*). The Indiana Supreme Court declined review.

Badelle then filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254 alleging numerous errors in the state court proceedings. The district court denied relief, and this court granted in part Badelle's request for a certificate of appealability. *See* 28 U.S.C. § 2253. Badelle argues on appeal that he is entitled to habeas relief because the prosecution withheld evidence contrary to *Brady v. Maryland*, 373 U.S. 83 (1963), and because his counsel was ineffective for failing to investigate and present the testimony of additional witnesses and for not sufficiently objecting to the admissibility of eyewitness identifications. We affirm.

## I. Background

On the snowy afternoon of December 5, 1977, Robert Kannapel Sr. and his son Robert Jr. were working together at a gas station in Indianapolis, Indiana. Robert Sr. was primarily working in the garage repairing automobiles

---

[1] The Indiana Court of Appeals noted without elaboration that the original petition for postconviction relief was filed on June 15, 1987, and that "subsequent petitions or amendments" were filed in 1987, 1989, 1996, and, finally, on May 27, 1999. *Badelle v. State*, 754 N.E.2d 510, 519 (Ind. App. 2001).

while his son manned the gas pumps and otherwise dealt with customers. Sometime between 3:00 p.m. and 3:30 p.m., a man unknown to the Kannapels walked into the station's front office area to escape the heavy snowfall and wait for a ride, which the Kannapels permitted him to do for the ensuing three hours.

At approximately 4 p.m., Edwin Kennedy pulled his car into the service station and it stalled in front of the gas pumps. Kennedy, with the assistance of Robert Kannapel Sr., Robert Kannapel Jr., and the loitering stranger, pushed the inoperable vehicle off the premises and onto the city street. Shortly after Kennedy's car had been moved, Floyd Piles, the owner of the gas station, stopped in to attend to some business for approximately ten minutes. He observed the stranger standing in the front office and exchanged greetings with him.

At approximately 5 p.m., a man named Joe Harris entered the station to visit with his friend Robert Kannapel Sr. Harris would remain at the station for the next hour. The stranger asked Harris for a cigarette, which Harris provided. Shortly after 6 p.m., the younger Robert Kannapel left the station for the evening.

At this point the stranger asked Harris and Robert Kannapel Sr. if they would call him a cab. As Harris and Kannapel searched the telephone book for the appropriate phone number, a man named John Hoffman entered the station and asked to use the telephone. Hoffman saw the stranger standing in the lobby and said hello. Kannapel told Hoffman there was no telephone available for public use and Hoffman promptly left the station.

Kannapel and Harris found a telephone number for a taxi, and Kannapel walked into a room at the rear of the station to place the call. The stranger followed Kannapel into the back room while Harris remained in the front lobby. Harris then heard the sound of a scuffle followed by a

gunshot and Kannapel's plea for an ambulance. As Harris began moving toward the back room to investigate, the stranger emerged holding a silver handgun with a long barrel. He threatened to shoot Harris if he went any further. Harris then ran from the station and called police from his nearby apartment. The shooter left the station and was observed by a man named Vincent Carrol who had just pulled his vehicle up to the gasoline pumps. Carrol observed that the man was holding a "long-barreled, silver-colored" handgun as he left the gas station. Help arrived too late to save Kannapel, who died from a gunshot wound.

The Indianapolis Police Department put Detective Dennis Morgan in charge of the investigation, assisted by Detective James Highbaugh. A composite sketch of the killer was created, and the sketch was published in an Indianapolis newspaper. Three and a half months after the murder, the police received a tip that Badelle looked very much like the sketch, and he was arrested on a probation violation.

The case against Badelle was based primarily on positive identifications made at lineups and in court by Robert Kannapel Jr. and Joe Harris, the only two living witnesses who had spent any significant amount of time observing the murderer hanging around the gas station on the day of the murder. Robert Kannapel Jr. identified Badelle as the man who had been loitering in the gas station the afternoon and evening of the murder. Joe Harris likewise identified Badelle as the man who shot and killed Robert Kannapel Sr. and threatened Harris with a gun following the shooting. Floyd Piles, Vincent Carrol, and John Hoffman had shorter looks at the suspect and could not identify Badelle. Edwin Kennedy testified that Badelle was not the man who helped him push his stalled vehicle off the gas station lot before the murder took place.

In addition to the two eyewitness identifications, a man named Charles ("Dick") Reedus testified that he had known

Badelle for eight to ten years and that Badelle had been in Reedus's place of business "in the fall of 1977"—just months prior to the murder—brandishing a shiny, chrome-colored handgun. Reedus also testified that Badelle had on that occasion fired a shot into the wall (perhaps accidentally), and that police subsequently searched for, but did not find, any bullet or bullet hole in the wall.

Additional facts and procedural history will be discussed where appropriate.[2]

## II. Discussion

Prior to enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner seeking a writ of habeas corpus in federal court received plenary review of his federal constitutional claims. *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1043 (7th Cir. 2003); *Agnew v. Leibach*, 250 F.3d 1123, 1129 (7th Cir. 2001). This changed in 1996 with passage of AEDPA. Habeas petitions (such as this one) filed after the enactment of AEDPA are subject to a standard of review that is far more deferential to the decisions of state courts and require a different showing on the part of the prisoner than under pre-AEDPA habeas law. "Under the new section 2254(d), a federal court reviews these [state court] determinations for reasonableness only, whereas the prior law provided for plenary review of these claims." *Abrams v. Barnett*, 121 F.3d 1036, 1037 (7th Cir. 1997).

None of this is new, but Badelle has inexplicably presented his claims as though this were a pre-AEDPA case. His failure to adequately comprehend the showing required

---

[2]  The foregoing facts are from Badelle's second trial. The guilty verdict from Badelle's first trial was set aside based on a discovery violation; the case was retried in June 1979.

of him under post-AEDPA standards complicates our evaluation of his claims. Review is further hampered by the scattershot nature of Badelle's arguments; the factual and legal underpinnings of his claims are presented in a disjointed fashion that makes them difficult to understand. Finally, we note that the vast majority of Badelle's briefing in this court consists of a verbatim replication of the brief he submitted to the Indiana Court of Appeals on his appeal of the denial of postconviction relief. This cut-and-paste approach falls far short of the showing required for habeas relief under AEDPA.

Badelle is entitled to habeas relief only if the decision of the Indiana Court of Appeals denying his petition for postconviction relief was (1) contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 367 (2000); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) ("The relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim."). A state court decision is "contrary to" federal law if it is "substantially different from the relevant precedent of [the Supreme Court]." *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) (quoting *Williams*, 529 U.S. at 405). This occurs when the state court applies a rule that contradicts the governing law set forth by the Supreme Court or, on facts materially indistinguishable from the facts of an applicable Supreme Court precedent, reaches a different result. *Ward v. Sternes,* 334 F.3d 696, 703 (7th Cir. 2003) (citing *Williams*, 529 U.S. at 405).

An "unreasonable application" of clearly established federal law occurs when the state court correctly identifies the governing legal rule but applies it unreasonably

to the facts of the particular prisoner's case. *Id*. But an "unreasonable application" of clearly established federal law is not synonymous with an erroneous decision. *Williams*, 529 U.S. at 410; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). Rather, the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. *Williams*, 529 U.S. at 410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) ("[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable."); *Rompilla v. Beard*, 125 S. Ct. 2456, 2462 (2005). Indeed, the Supreme Court has held that even a "clearly erroneous" state court decision is not necessarily "unreasonable" for purposes of § 2254:

> The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. . . . [T]he Ninth Circuit [has] defined 'objectively unreasonable' to mean 'clear error.' These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted).

We are therefore required to distinguish between state court decisions that are clearly erroneous and those that are so erroneous as to be "objectively unreasonable"; only the latter qualify for habeas relief under AEDPA. We "take[ ] for granted that for a given set of facts, there exists the possibility of 'several equally plausible outcomes.'" We will "uphold those outcomes which comport with recognized

conventions of legal reasoning and set aside those which do not." *Ward*, 334 F.3d at 703. Stated another way, an unreasonable state court decision is one "lying well outside the boundaries of permissible differences of opinion," *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002), or one that is "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997).

## A. *Brady* Claims

Many of Badelle's claims are premised on alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady* and its progeny, the prosecution in a criminal case has an affirmative duty to disclose evidence that is both favorable to the defense and material to either guilt or punishment. *Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995); *United States v. Bagley*, 473 U.S. 667, 674-75 (1985). The suppression of such evidence deprives a defendant of a fair trial and violates due process. *Brady*, 373 U.S. at 86-87. To establish a *Brady* violation, a criminal defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to an issue at trial. *Boss*, 263 F.3d at 740. Favorable suppressed evidence is material for *Brady* purposes if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-34. A "reasonable probability" of a different result is shown when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

### 1. The Investigation of Detective Richard Combs

When Charles Reedus reported to police that Badelle brandished and fired a silver handgun in Reedus's place of business a few months before the murder, Indianapolis Police Detective Richard Combs went to Reedus's store and searched the establishment looking for a bullet or bullet hole. Combs found no bullet or bullet fragment and could not locate a bullet hole in the wall. Detective Combs's fruitless search was never disclosed to the defense prior to trial, and Combs did not testify at Badelle's murder trial.

In *Badelle II*, the Indiana Court of Appeals held that this evidence met the first two prongs of the *Brady* test in that it was never disclosed to the defendant and was favorable to the defense. However, relying on *Kyles*, the court held that the information was not material "as there is no reasonable probability that had the evidence been disclosed to the defense[,] the result of Badelle's trial would have been different." *Badelle II*, 754 N.E.2d at 530.

Badelle makes absolutely no effort to explain how the state court's application of *Kyles* was so erroneous as to be objectively unreasonable. His brief states only that he is "entitled to a reversal of his conviction on this issue because he was blocked with [sic] the ability to impeach Reedus due to the State's suppression of exculpatory evidence." This is merely a reiteration of the grounds on which his claim was originally brought in the state postconviction proceeding and does not suffice under the post-AEDPA version of § 2254. Badelle is required to do more than simply assert error on the part of the state court. *See Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) ("The habeas applicant has the burden of proof to show that the application of federal law was unreasonable."); *Woodford*, 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."). He has not offered us

any basis upon which to conclude that the Indiana court's decision lies "well outside" the boundaries of permissible differences of opinion, and we perceive none ourselves. Reedus himself testified that the police searched and did not find a bullet or bullet hole on his premises.

### 2. The Investigation of Detective Clarence Grant

At Badelle's postconviction hearing, Indianapolis Police Detective Clarence Grant testified that in the months following the murder of Robert Kannapel, he contacted Richard "Dickie Boy" Carpenter, an informant who had supplied Grant with good information in the past. Grant asked Carpenter to see if he could "find out what took place and who did it" and informed Carpenter that "right at this time they're searching for a guy named Robert Badelle." Carpenter told Grant that Badelle could not have committed the crime because Badelle was "up here hanging out with us at the Drake [Motel]" at the time of the murder. Detective Grant testified that he sent this information to "the homicide office" and that this ended his involvement in the matter.

The *Badelle II* court found that Carpenter's statement to Detective Grant was favorable to the defense and was not disclosed to the defense prior to trial, satisfying the first two elements of a *Brady* claim. *Badelle II*, 754 N.E.2d at 531. With respect to materiality, however, the Indiana court held as follows: "[T]he nondisclosure of a known alibi witness erodes this Court's confidence in the validity of Badelle's conviction. Nevertheless, standing alone, we cannot say that this information would have changed the outcome of Badelle's trial." *Id*.

Once again, Badelle has failed to present us with any substantive argument as to why he is entitled to relief on this issue under post-AEDPA habeas standards. He makes no specific reference to the Indiana court's holding

regarding Detective Grant's investigation. He merely states, in conclusory fashion and without citation to authority, that "whether the State Court's decision was contrary to or an unreasonable application of federal law on this issue is debatable among jurists of reason[.]" This is virtually the antithesis of the showing he is required to make for issuance of the writ. An unreasonable state court decision for purposes of post-AEDPA habeas relief is not one that is merely "debatable" but one that lies "well outside the boundaries of permissible differences of opinion." *Hardaway,* 302 F.3d at 762. Badelle has thus failed to carry his burden of proof on this issue. In this limited instance, however, we will make his argument for him because the *Badelle II* opinion contains an arguable inconsistency that cries out for resolution.

As we have noted, the Indiana Court of Appeals denied relief on the basis that the suppressed evidence regarding Detective Grant's investigation did not meet the test for materiality under *Brady* and *Kyles*, concluding that "standing alone, we cannot say that this information would have changed the outcome of Badelle's trial." *Badelle II,* 754 N.E.2d at 531. This can only be viewed as the court's "bottom line" on this issue, and it is consistent with applicable federal law, cited numerous times in *Badelle II*, that evidence is material for *Brady* purposes only where there is a reasonable probability that had the favorable evidence been disclosed in a timely fashion, the result of the proceeding would have been different. *Id.* at 526 (quoting *Kyles*, 514 U.S. at 433-34).

The internal inconsistency arises from the sentence that immediately precedes the court's bottom line holding: "Moreover, the nondisclosure of a known alibi witness erodes this Court's confidence in the validity of Badelle's conviction." *Badelle II,* 754 N.E.2d at 531. This language is close to the *Bagley* elaboration on the "reasonable probability" standard, to wit, that a "reasonable probability" of a

different outcome exists when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678; *see also Kyles*, 514 U.S. at 434. If the Indiana court's "erodes confidence" language is understood as the equivalent of *Bagley's* "undermines confidence" formulation, an argument could be made (though, as we have said, Badelle does not make it) that the inconsistency amounts to an unreasonable application of Supreme Court precedent.

The deferential standard of review under AEDPA requires that we attempt to reconcile, if possible, arguably conflicting language in state court decisions, and we think the conflict in the Indiana court's decision can be reconciled. The Indiana Court of Appeals referred to *Bagley's* "undermines confidence" standard in its general discussion of the law applicable to *Brady* claims, *Badelle II*, 754 N.E.2d at 526, and was thus plainly aware of and properly cited to the applicable federal standard.[3] The court then chose slightly different language to express its conclusion that Badelle's claim, while arguably meritorious, fell just short. That is, the state court's confidence in the outcome, while eroded by the prosecution's nondisclosure, was not undermined to the degree necessary to support a conclusion that a reasonable probability of a different result existed. This reading is consistent with the state court's ultimate resolution of the issue: "*Nevertheless,* standing alone, we cannot say that [Detective Grant's] information would have changed the outcome of Badelle's trial." (Emphasis added.) The state court apparently concluded that although its confidence in the verdict was "eroded," it was not so far undermined to the extent that there was a reasonable probability of a

---

[3] The *Badelle II* court actually cited *Farris v. State*, 732 N.E.2d 230, 233 (Ind. App. 2000) for this proposition, but *Farris* was a *Brady* case that relied upon *Bagley* for a recitation of the applicable law.

different outcome. We cannot conclude that this decision is contrary to or an unreasonable application of clearly established federal law.

### 3. Tobin Rice and Reginald "Pee Wee" White

Tobin Rice was an Indiana juvenile probation officer at the time of the murder and supervised a probationer named Reginald White. At Badelle's postconviction hearing, Rice testified that at some point after the murder of Robert Kannapel he became aware that Detective Highbaugh was investigating a lead that someone known as "Pee Wee" had committed the murder. Because White was known as "Pee Wee," Rice called Highbaugh and informed him that "Pee Wee" and Reginald White were one and the same and that Rice suspected White may have committed the crime.

The *Badelle II* court held that this evidence was not "suppressed" within the meaning of *Brady* because Detective Highbaugh was a witness for the defense at Badelle's murder trial, and "with reasonable inquiry, Trial Counsel could have ascertained Rice's name and information from Detective Highbaugh." *Badelle II*, 754 N.E.2d at 526-27. Highbaugh apparently became convinced that Badelle had not committed the Kannapel murder and testified for the defense.

Evidence is not suppressed for *Brady* purposes where it is "available to the defendant through the exercise of reasonable diligence." *Boss*, 263 F.3d at 740. Again, Badelle offers no argument as to why the state court's resolution of this aspect of his *Brady* claim was contrary to or an objectively unreasonable application of federal law. He merely restates, virtually verbatim, the argument he made in his brief in the Indiana Court of Appeals. Plenary review in habeas cases no longer applies, as we have noted; Badelle has utterly failed to carry his post-AEDPA burden of proof on this issue.

Badelle also claims the prosecution failed to disclose that "Pee Wee" White had been in the gas station on the day of the murder and (in Badelle's self-serving spin on the testimony) was the person who assisted Edwin Kennedy in pushing his stalled vehicle off the station's lot. White testified at Badelle's postconviction hearing that he went to the gas station every morning on the way to work to get change for the bus. He testified that he was in the station at 8 a.m. on the morning of the murder to get his change and that he made Detective Highbaugh aware of this fact. White testified that before he entered the station that morning, he helped to push a vehicle "into the filling station" that had either stalled or gotten stuck in the snow on the street. White testified that he then got his change, got on the bus, and went to work; he was not in the gas station at any time after 8 a.m. on the day of the murder. (We note White's postconviction testimony conflicts with trial testimony that the murderer and others pushed a stalled car *out* of the lot on the *afternoon* of the murder.)

Badelle claims White's presence at the station on the day of the murder and the fact that he helped to push a car onto the lot prior to entering the station were suppressed by the prosecution in violation of *Brady*. The *Badelle II* court held that this information was available to the defense through the exercise of reasonable diligence because Badelle was well aware of White and his status as a possible suspect prior to trial. The court noted again that Detective Highbaugh was a defense witness at trial and testified about his investigation of White, and also that White himself was presented to the jury in the courtroom during the trial and was asked to stand alongside Badelle in front of the jury. *Badelle II*, 754 N.E.2d at 528.

The entirety of Badelle's "argument" on this issue consists of a verbatim duplication of the brief he submitted to the Indiana Court of Appeals, right down to a concluding statement that the alleged suppression of this evidence

violated "the Indiana Constitution[4]." He has failed to even reference the existence of the state court's decision, much less sustain his burden of demonstrating that the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

### 4. Footprints

Badelle claims the prosecution suppressed evidence that "there was a discrepancy as to which way the perpetrator ran" after leaving the gas station based on the presence of more than one set of footprints in the snow. Badelle's trial attorney died twenty years ago, and Badelle cannot say whether his attorney knew about a second set of footprints; he offers only that it is unknown whether his attorney was made aware of a second set of footprints. It is not surprising, therefore, that the Indiana Court of Appeals held in cursory fashion that its "review of the record reveals that a preponderance of the evidence does not indicate that the State suppressed information regarding footprints." *Badelle II,* 754 N.E.2d at 529.

On habeas review, we presume that the factual findings of the state appellate court are correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Ruvalcaba v. Chandler*, 416 F.3d 555, 559 (7th Cir. 2005). Badelle makes no reference to the holding of the Indiana Court of Appeals; his argument is again comprised solely of a verbatim copying of the brief he submitted to that court. He has thus failed to carry his burden under § 2254(e)(1).

---

[4] Of course, Badelle is entitled to habeas relief only if he can prove that he is in custody "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a).

### 5. Walter Cowherd

Badelle claims that the prosecution suppressed information concerning the whereabouts of another possible suspect in the murder, Walter Cowherd. The *Badelle II* court concluded that no evidence had been suppressed regarding Cowherd because "Badelle's citations to the record fail to reveal that the State knew of Cowherd's location at the time of trial." *Badelle II*, 754 N.E.2d at 534. Badelle's argument is once again a verbatim reproduction of the brief he submitted to the Indiana Court of Appeals and as such does not even reference the state court's holding, much less challenge its underlying facts or explain why it should be considered contrary to or an unreasonable application of clearly established federal law.

### 6. Detective R. C. Green's Investigation

Detective R. C. Green assisted in the investigation of Robert Kannapel's murder for a period of two weeks. Green testified at the postconviction hearing that he received a tip that a person matching the description of the killer "hung around with a young lady" who lived in a certain apartment building. When Green arrived at the apartment building to investigate, Detective Highbaugh was already there on stakeout, following up on his lead that someone named "Pee Wee" had committed the crime. The two detectives shared their information and explained to each other the tips that had brought them to the same building. This was the sum and substance of Green's testimony on this point. Badelle claims the prosecution never revealed to defense counsel the substance of Green's investigation and that this suppression of evidence violated *Brady*.

The Indiana Court of Appeals held that this information was not suppressed within the meaning of *Brady* because it was available to Badelle's trial counsel through the exercise of reasonable diligence in that Detective

Highbaugh was a defense witness at trial and the limited information known to Green was also known to Highbaugh. *Badelle II*, 754 N.E.2d at 530. As with his other arguments, Badelle's brief on this point is identical to the one he filed in state court. He has not identified how the state court's disposition of this issue was contrary to or an unreasonable application of clearly established federal law.

### 7. Deputy Chief Tim Foley and Detective Don Campbell

Badelle asserts that Deputy Chief of Police Tim Foley believed that the lead investigator on the case, Detective Dennis Morgan, lacked the investigative skills to properly investigate a homicide, that he failed to maintain adequate case documentation on the homicides he investigated, and that he likely felt pressure to solve the Kannapel murder. Detective Don Campbell testified at the postconviction hearing that Indianapolis police officers often felt departmental pressure to solve cases as quickly as possible. Badelle argues that this information was "suppressed" by the prosecution contrary to *Brady*.

We have searched the record and find no *Brady* claim premised on these allegations was brought before the Indiana Court of Appeals, and no such *Brady* claim was asserted in Badelle's request for review by the Indiana Supreme Court. There is no mention of this claim in the *Badelle II* decision. A habeas petitioner must exhaust state remedies—that is, give the state courts an opportunity to address each claim. *Mahaffey v. Schomig*, 294 F.3d 907, 914 (7th Cir. 2002). To satisfy this requirement, a petitioner must present to the state judiciary both the operative facts and legal principles that control each claim. *Id.*; *see also Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). The failure to do so results in a forfeiture of federal review.

*Wilson*, 243 F.3d at 327. These claims have not been preserved for habeas review.

### 8. The Cabdriver

Approximately two hours after Robert Kannapel was fatally shot, a cabdriver named Aaron Jensen was robbed six blocks from the gas station. It was the prosecution's theory that the same person committed both crimes, and Jensen testified at Badelle's murder trial that Badelle was the man who robbed him.[5] Badelle argues that his counsel was not informed of Jensen's identity and the prosecution's intention to call him as a witness until the day before trial was to begin, and that this tactic violated the prosecution's obligation to disclose favorable material evidence to the defense. The Indiana Court of Appeals rejected this argument:

> Here, where Trial Counsel was given notice, albeit short notice, of the State's intent to call Jensen to testify, it cannot be held that the State suppressed information known to him. Information known to Jensen was available to Trial Counsel through 'reasonable diligence' and therefore was not suppressed by the State.

*Badelle II*, 754 N.E.2d at 533. Because Badelle's brief on this issue is once again nothing more than a duplication of the brief he filed with the Indiana Court of Appeals, he neither addresses the court's ruling on the issue nor posits any argument as to why it was contrary to or an unreasonable application of clearly established federal law. We cannot see how this is a *Brady* issue in any event; Jensen's testimony was hardly favorable to Badelle.

---

[5] Badelle was subsequently convicted of the robbery of Jensen in a separate proceeding.

**B.  Ineffective Assistance of Counsel**

### 1.  Defaulted Claims/*Strickland* Legal Standards

In his brief to this court, Badelle has attempted, in a single introductory sentence, to convert all of the foregoing *Brady* claims into ineffective assistance of counsel claims: "The State loses either way, because if it is determined that the State did not unlawfully suppress the matters raised in this issue, then trial counsel was defective for failing to pursue those matters." As we have noted, Badelle then goes on to reproduce the sections of his state court brief containing his *Brady* arguments. Nowhere in this material is there any discussion of how counsel's performance fell below an objective standard of reasonableness or how Badelle's defense was prejudiced, nor is there any argument regarding the Indiana court's application of *Strickland v. Washington,* 466 U.S. 668 (1984).

The *Brady* claims that Badelle wants to reconfigure as *Strickland* claims are defaulted for failure to raise them in the state court. Assertions of error in criminal proceedings must be raised in state court in order to form the basis for relief in habeas. *Breard v. Greene*, 523 U.S. 371, 375 (1998). Further, the claims raised by a petitioner in state court must be presented in a manner that fairly alerts the state court of the "federal constitutional grounds for his claim." *Porter v. Gramley*, 112 F.3d 1308, 1315 (7th Cir. 1997). Fair presentment of a petitioner's claims to a state tribunal requires the petitioner to "give the state courts a meaningful opportunity to pass upon the substance of the claims" by presenting "both the operative facts and the controlling legal principles" that he believes should govern the analysis. *Rodriguez v. Scilla*, 193 F.3d 913, 916 (7th Cir. 1999) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *see also Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999).

Federal courts may only review defaulted claims if the petitioner shows cause for the failure to raise them and consequent prejudice, or when he shows that a fundamental miscarriage of justice will occur unless the federal court hears the claim. *Wilson*, 243 F.3d at 329. Badelle makes no attempt to demonstrate cause for his default but does hint at the possibility that a fundamental miscarriage of justice is at stake because he is actually innocent of the murder and a victim of mistaken identity. We cannot agree. The evidence against Badelle at trial may have been conflicting, but we cannot say that an innocent man has been convicted. Badelle was positively identified as the killer by the two people who spent considerable time with him on the afternoon of the murder. We move on to consider only those claims of ineffective assistance of counsel that were presented to the Indiana Court of Appeals.

A petitioner asserting an ineffective assistance of counsel claim under *Strickland* must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. *Strickland* requires a reviewing court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690; *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1985). In so doing, "it will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." *Kimmelman*, 477 U.S. at 386. To establish prejudice, the petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome. *Id.* at 694; *Wiggins*, 539 U.S. at 534.

### 2. Inadequate Pretrial Investigation

The Indiana Court of Appeals described Badelle's challenge to the adequacy of his attorney's pretrial investigation as follows: "Badelle argues that Trial Counsel was ineffective for failing to conduct a reasonably satisfactory pretrial investigation that would have uncovered additional witnesses favorable to his defense." *Badelle II*, 754 N.E.2d at 538. Exactly which potential witnesses were at issue is not stated in the Indiana court's opinion; neither are they identified in Badelle's briefing. It is possible that Badelle's generic references to "pre-trial investigation" and "additional witnesses" are meant to refer back to his *Brady* claims; we have rejected this attempt at bootstrapping. The contours of this claim are thus hazy at best, but we press on.

The Indiana court tackled Badelle's argument by first noting that his defense was based on a theory of mistaken identity and then describing the efforts trial counsel undertook to support that defense. These included the following: (1) presenting testimony that Floyd Piles, the gas station owner, picked Reginald White out of a lineup on one occasion;[6] (2) presenting testimony from Edwin Kennedy that Badelle was not the man who helped push his vehicle out of the gas station lot on the day of the crime; (3) chal-

---

[6] Piles viewed lineups on two different days, separated by over a year. On the first occasion he picked Badelle as the man he had seen at the station on the day of the murder. A year later, he selected White. Badelle and White were never presented in the same lineup. *Badelle II*, 754 N.E.2d at 539 n.19. At trial Piles simply could not say whether Badelle was or was not the man he had seen.

lenging the mental competence of prosecution witness Joe Harris; and (4) presenting testimony from Detectives Highbaugh and Morgan regarding the other individuals they considered suspects during the course of their investigation. *Badelle II*, 754 N.E.2d at 539. The court concluded its analysis as follows:

> Clearly the foregoing is not an exhaustive list of the evidence that Trial Counsel presented to the jury, however it suffices for our purposes of determining whether Trial Counsel provided adequate pretrial investigation and preparation. Trial Counsel's efforts were more than adequate to support his defense of mistaken identity. Accordingly, Trial Counsel's decision not to call or seek out additional witnesses was a judgment call 'within the wide range of reasonable professional assistance.'

*Id.*

Badelle claims this analysis is at odds with *Strickland* because it sidesteps consideration of the individual errors or omissions allegedly constituting defective performance in favor of an analysis of counsel's performance as a whole. But Badelle did not describe (and still has not described) the particular pretrial investigative errors or omissions that form the basis of this aspect of his ineffective assistance of counsel claim. In the absence of a particularized claim of pretrial error by trial counsel, the Indiana court can hardly be faulted for its generalized evaluation of counsel's overall performance. In any event, the premise of Badelle's argument is flawed; the test for deficient performance is applied "in light of all the circumstances." *Strickland*, 466 U.S. at 690.

### 3. Improper Prejudice Standard

Badelle argues that the state court's formulation of the prejudice prong of a claim for ineffective assistance of

counsel was an unreasonable application of *Strickland* because it required Badelle to prove that he was "deprived . . . of a fair trial" by "a breakdown in the adversarial process that rendered the result unreliable." *See Badelle II*, 754 N.E.2d at 536. We need not address this issue because the Indiana court never actually *applied* this formulation to the facts of the case.

The statement to which Badelle objects is lifted from the section of the state court's opinion that precedes its discussion of the specifics (such as they were) of Badelle's ineffective assistance claims. In this introductory section, the court summarized the law applicable to both the deficient performance and prejudice prongs of a claim under *Strickland*. However, when the court then turned to the application of the law to Badelle's specific claims, not once did the court find that Badelle had met the initial showing of deficient performance that would necessitate moving on to an analysis of possible prejudice.[7] Because the Indiana court had no occasion to proceed to evaluate prejudice, we need not consider whether its decision was contrary to or an unreasonable application of the federal standard for evaluating prejudice in an ineffective assistance of counsel claim.

## 4. Pretrial Identifications

Badelle claims his trial counsel rendered ineffective assistance when he failed to "sufficiently object to the admissibility of the various pretrial and in-court identifications" of Badelle by eyewitnesses. On March 25, 1978,

---

[7] The court summarized its holdings as follows: "Here, Badelle has failed to substantiate any error, by either Trial Counsel or Appellate Counsel, which would convince this Court that he received an inadequate defense." *Badelle II*, 754 N.E.2d at 543.

the same day he was arrested, Badelle's photograph appeared in an Indianapolis newspaper identifying him as a suspect in the murder. The newspaper was published in the afternoon. During the course of that same day, Detective Morgan separately showed Edwin Kennedy and Joe Harris an array of six photographs, one of which was the same photograph of Badelle that appeared in the newspaper. Kennedy did not identify anyone in the photo array as the man who assisted in pushing his car out of the gas station lot. Harris identified Badelle.

Five days later Badelle stood in a lineup viewed by witnesses Piles, Harris, Kennedy, and Robert Kannapel Jr. Harris, Piles, and Kannapel identified Badelle; Kennedy did not identify anyone. Harris and Kannapel testified at trial and identified Badelle in court as the loitering man in the gas station who murdered Robert Kannapel Sr.

Badelle argues that the photo array was unduly suggestive because there is a possibility Harris saw the photograph of Badelle in the newspaper prior to being shown the six photographs. This is pure speculation; there is nothing in the record suggesting Harris was tainted by the newspaper photo. Badelle does not explain the factual basis for his argument that the lineup was unduly suggestive. Neither contention is sufficient to sustain his challenge to the Indiana court's rejection of his ineffective assistance of counsel claim. If there was no valid basis to object to the admissibility of the in-court identifications, trial counsel's performance cannot have been deficient. The Indiana court held as much, rejecting this aspect of Badelle's ineffective assistance of counsel claim because there was no basis to challenge the admissibility of the in-court identifications. *Badelle II*, 754 N.E.2d at 538.

Challenges to the admissibility of identification evidence are evaluated by reference to a two-part inquiry that focuses on whether the identification procedure was unduly

suggestive and whether the resulting identification is reliable (and therefore admissible) despite any suggestiveness in the pretrial identification procedure. *Alexander v. South Bend,* 433 F.3d 550, 555 (7th Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977)); *see also Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). The Indiana Court of Appeals held that because the in-court identifications were properly admitted, Badelle's trial counsel cannot have been ineffective for failing to object to the suggestiveness of the pretrial identification procedures. *Badelle II*, 754 N.E.2d at 538. Badelle has not addressed the state court's holding in this regard and persists in his approach of presenting us only with the identical argument he made to the Indiana Court of Appeals. In the absence of any argument that the state court's decision was contrary to or an unreasonable application of federal law, habeas relief is unavailable.

### 5.  Effectiveness of Appellate Counsel

Finally, Badelle's brief contains two issues that he denominates as claims for ineffective assistance of appellate counsel. The Indiana Court of Appeals declined to address the merits of these claims because Badelle failed to provide the court with any pertinent citations to the record or case law support. *Badelle II,* 754 N.E.2d at 541. The court relied on *Marshall v. State*, 621 N.E.2d 308, 318 (Ind. 1993), for its waiver holding:

> [I]t is the responsibility of appellant to support his argument on appeal with appropriate citations to legal authorities as well as to appropriate sections of the record. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied,* 475 U.S. 1031, 106 S. Ct. 1241, 89 L. Ed. 2d 349. Without citation to legal authority in addition to citation of the record, we cannot determine the merits of the claim and, thus, consider the issue waived. *Id.*

Before asserting a habeas claim in federal court, a petitioner must not only fairly present his claims to the state courts, he must do so at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146, *modified on reh'g denied*, 79 F.3d 578 (7th Cir. 1996). The failure to do so bars review in federal court. *Id.*; *see also Mahaffrey*, 294 F.3d at 915. Again, Badelle has demonstrated neither cause for not adequately presenting his claims to the state court nor a miscarriage of justice that would justify overlooking his failure to do so.

For the foregoing reasons, the decision of the district court denying the petition for a writ of habeas corpus is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*